UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

**NELSON FERNANDEZ**,

      Plaintiff,

vs.

**TERVIS TUMBLER COMPANY,**
**d/b/a TERVIS, a Florida for-profit**
**corporation,**

      Defendant.

_____/

## <u>COMPLAINT</u>

Plaintiff NELSON FERNANDEZ, through undersigned counsel, sues Defendant TERVIS

TUMBLER COMPANY, d/b/a TERVIS, a Florida for-profit corporation, and alleges as follows:

1.      This is an action for declaratory and injunctive relief pursuant to Title III of the

Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R.

Part 36.  This is also an action for declaratory and injunctive relief to prevent discrimination which

includes equal access to an internet website for services, to order merchandise, and to secure

information about Defendant's stores online. This is also an action for declaratory and injunctive

relief to prevent the continuing act of trespass against the Plaintiff's personal property (his personal

computer), and for compensatory damages to Plaintiff for such trespass.  Remedies provided under

common law for trespass are not exclusive and may be sought in connection with suits brought

under the ADA.

2.      This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331 and the provisions of the ADA.  Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.

3.      Venue is proper in this Court as all actions complained of herein and injuries and damages suffered occurred in the Southern District of Florida.

4.      Plaintiff NELSON FERNANDEZ is a resident of Palm Beach County, Florida, is *sui juris*, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5.      Plaintiff is and at all relevant times has been visually impaired and physically disabled who has been diagnosed with Relapsing-Remitting Multiple Sclerosis ("RRMS"). As a result of his disease, Plaintiff is currently paralyzed in approximately 80% to 90% of his body as a whole and only has limited use of his left hand.  Further, because of his disease, Plaintiff has developed optic neuritis and is visually disabled, with complete blindness in one eye and limited vision in the other eye.  Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, sight, accurately visualizing his world, and adequately traversing obstacles.  As such, he is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, *et seq*., and in 42 U.S.C. §3602(h).

6.      Because he is visually disabled, Plaintiff cannot use his computer without the assistance of appropriate and available screen reader software and other technology and assistance.

7.      Defendant is a Florida for-profit corporation company authorized to do business and doing business in the State of Florida.  Defendant owns and operates a chain of retail stores selling tumblers, water bottles, and custom-made gifts to the public, including one of the stores

Plaintiff had patronized and intended to patronize at 1201 US Highway 1, Suite 5, North Palm Beach, Florida.

8.      Plaintiff's visual disability limits him in the performance of major life activities, including sight, and he requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with his use of a computer.

9.      Plaintiff frequently accesses the internet.  Because he is significantly and permanently visually disabled, to effectively communicate and comprehend information available on the internet and hereby access/comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

10.     At all times material hereto, Defendant was and still is an organization that owns and operates a chain of stores selling tumblers, water bottles, and custom-made gifts under the name "Tervis".  Each Tervis store is open to the public.  As the owner and operator of these retail stores, Defendant is defined as a place of "public accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

11.     Because Defendant is a store open to the public, each of Defendant's physical stores is a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(E), and 28 C.F.R. Part 36.

12.     Defendant also controls, maintains, and/or operates an adjunct website called https://www.tervis.com (hereinafter the "Website").  One of the functions of the Website is to provide the public information on the various locations of Defendant's stores that sell its

merchandise throughout the United States and within the State of Florida. Defendant also sells to the public its merchandise and goods through the Website.

13.     The Website also services Defendant's physical stores by providing information on its available products and merchandise, tips and advice, editorials, sales campaigns, events, and other information that Defendant is interested in communicating to its customers.

14.     Because the Website allows the public the ability to locate Defendant's physical stores, purchase merchandise that is also available for purchase in the physical stores, purchase gift cards for use in the physical stores, check gift card balances, and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use in the physical stores, the Website is an extension of, and gateway to, Defendant's physical stores. By this nexus, the Website is characterized as an intangible service, privilege, and advantage provided by a place of public accommodation as defined under the ADA and thus an extension of the services, privileges, and advantages made available to the general public by Defendant through its brick and mortar locations and businesses.

15.     Because the public can view and purchase Defendant's merchandise that is also offered for sale in Defendant's physical stores, purchase gift cards for use in the physical stores, check gift card balances, and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use in the physical stores, the Website is an extension of, and gateway to, the physical stores, which are places of public accommodation pursuant to the ADA, 42 U.S.C. §12181(7)(E). As such, the Website is an intangible service, privilege, and advantage of Defendant's brick and mortar store locations that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those

4

individuals the same full and equal enjoyment of the services, privileges, and advantages as are afforded to the non-disabled general public both online and in the physical stores.

16.     At all times material hereto, Defendant was and still is an organization owning and operating the Website.  Since the Website is open to the public through the internet, by this nexus the Website is an intangible service, privilege, and advantage of Defendant's brick and mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with visual or physical disabilities, and must not deny those individuals the full and equal enjoyment of the services, privileges, and advantages as are afforded to the non-disabled public both online and in the physical stores.  As such, Defendant has subjected itself and the Website to the requirements of the ADA.

17.     Plaintiff is and has been a customer who is interested in patronizing, and intends to patronize in the near future once the Website's access barriers described herein are removed or remedied, Defendant's physical stores (including the store located at 1201 US Highway 1, Suite 5, North Palm Beach, Florida), and to purchase merchandise and gift cards, check gift card balances, and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use on the Website or in the physical stores.

18.     The opportunity to shop and pre-shop Defendant's merchandise, purchase gift cards to use in the physical stores, and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use in the physical stores from his home are important accommodations for Plaintiff because traveling outside of his home as a physically and visually disabled individual is often difficult, hazardous, frightening, frustrating and confusing experience. Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually impaired individuals using the screen reader software.

5

19.     Like many consumers, Plaintiff accesses a number of websites at a time to help plan his visit, compare merchandise, prices, sales, discounts, and promotions. Plaintiff may look at several dozens of sites to compare features, discounts, promotions, and prices.

20.     During the month of October 2020, Plaintiff attempted on a number of occasions to utilize the Website to browse through the merchandise and online offers to educate himself as to the merchandise, sales, discounts, and promotions being offered, search for the brick and mortar store locations and check store hours, and check pricing of merchandise with the intent to making a purchase through the Website or at one of Defendant's stores.

21.     Plaintiff utilizes available screen reader software that allows individuals who are visually disabled to communicate with websites.  However, Defendant's Website contains access barriers that prevent free and full use by visually disabled individuals using keyboards and available screen reader software.  These barriers are pervasive and include, but are not limited to:

   a. Rotating promo banner on the header of the website was not labeled to integrate with the screen reader;

   b. Site function like menu drop-down options were not labeled to integrate with the screen reader; and

   c. Mislabeled site function like quantity option.

22.     The Website also lacks prompting information and accommodations necessary to allow visually disabled individuals who use screen reader software to locate and accurately fill out online forms to purchase Defendant's merchandise from the Website.

23.     Plaintiff attempted to locate an "accessibility" notice, statement, or policy on the Website that would direct him to a webpage with contact information for disabled individuals who have questions or concerns about, or who are having difficulties communicating with, the Website.

However, Plaintiff was unable to do so because no such link or notice, statement, or policy existed on the Website.

24.     The fact that Plaintiff could not communicate with or within the Website left him feeling excluded, as he is unable to participate in the same online computer shopping experience, with access to the merchandise, sales, discounts, and promotions as provided  at the Website and for use in the physical stores, as the non-visually disabled public.

25.     Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to patronize Defendant's physical stores and to use the Website, but he is presently unable to fully do so as he is unable to effectively communicate with Defendant due to his severe visual disability and the Website's access barriers.  Thus, Plaintiff, as well as others who are blind or with visual disabilities, will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

26.     Because of the nexus between Defendant's retail stores and the Website, and the fact that the Website clearly provides support and is connected to Defendant's retail stores for its operation and use, the Website is an intangible service, privilege, and an advantage of Defendant's brick and mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal enjoyment of the services, privileges, and advantages as are afforded to the non-disabled public both online and in the physical stores, which are places of public accommodations subject to the requirements of the ADA.

27.     On information and belief, Defendant has not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

7

28.     On information and belief, Defendant has not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

29.     On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

30.     On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

31.     On information and belief, Defendant has not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

32.     On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

33.     On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

34.     On information and belief, Defendant has not created and instituted a Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

35.     On information and belief, Defendant has not created and instituted on the Website a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how Defendant will have the Website, applications, and digital assets accessible to the visually disabled or blind community.

36.     On information and belief, the Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher versions of web accessibility.

37.     On information and belief, Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of purchasing Defendant's merchandise offered on the Website online from their homes.

38.     Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided by and through the Website, in contravention of the ADA.

39.     Further, public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with disabilities such as Plaintiff.

40.     The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet shopping Websites, such as the Website at issue in the instant action.

41.     On information and belief, Defendant is, and at all times has been, aware of the barriers to effective communication within the Website which prevent individuals with disabilities who are visually disabled from the means to comprehend information presented therein.

42.     On information and belief, Defendant is aware of the need to provide full access to all visitors to the Website.

43.      The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with disabilities who are visually disabled, including Plaintiff.

44.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means

9

to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with its website access and operation.

45.     Notice to Defendant is not required because of Defendant's failure to cure the violations.

46.     Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

47.     Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.

**Trespass Violations**

48.     Plaintiff utilizes his computer to access websites such as the Website.

49.     Plaintiff uses his computer as a method of conveyance of his personal information. Plaintiff thus stores his personal information and retains his browsing history on his computer.

50.     Throughout the Website, Defendant has placed forms of software to collect non-public information on the website's user's preferences and internet browsing habits.

51.      Defendant informs the Website user that the user's personal information and browsing history is collected and is used for targeted marketing and advertising.

52.     Because of his blindness, Plaintiff was unable to comprehend the Website; therefore, Plaintiff has had no choice, and likewise no knowledge, of Defendant's installation of data and information tracking software and the collection of the website user's browsing history and analytics placed on the user's computer.

53.     Based upon the review of the Website, when a user accesses the Website, Defendant places software on the Plaintiff's personal computer, without the user's advance consent or

knowledge.  It is also clear that Defendant has used browser cookies to identify websites that Plaintiff has previously visited by accessing Plaintiff's web browser history.

<u>**COUNT I – VIOLATION OF THE ADA**</u>

54.     Plaintiff re-alleges paragraphs 1 through 47 as if set forth fully herein.

55.     Pursuant to 42 U.S.C. §12181(7)(E), Defendant is a public accommodation under the ADA because it owns and/or operates the Website, as defined within §12181(7)(E) and is subject to the ADA.

56.     Pursuant to 42 U.S.C. §12181(7)(E), the Website is covered under the ADA because it provides the general public with the ability to locate Defendant's retail stores, purchase merchandise that is also available for purchase in the retail stores, purchase gift cards for use in the retail stores, check gift card balances, and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use at the retail stores.  The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendant's physical stores.  Further, the Website also serves to augment Defendant's physical stores by providing the public information on the various physical locations of the stores and by educating the public as to Defendant's available merchandise sold through the Website and in its physical stores.

57.     Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

58.     Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods,

services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

59.    In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

60.    Defendant's Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

61.    Because of the inaccessibility of the Website, individuals with disabilities who are visually disabled are denied full and equal enjoyment of the information and services that Defendant has made available to the public on its Website, and at its physical stores, in violation of 42 U.S.C. §12101, *et seq*, and as prohibited by 42 U.S.C. §12182, *et seq*.

62.    The Website was subsequently visited by Plaintiff's expert in November 2020, and the expert determination was that the same access barriers that Plaintiff had initially encountered, as well as numerous additional access barriers, existed. Defendant thus has not adequately remediated the Website to make it fully accessible to blind and visually disabled person such as Plaintiff.  Defendant also has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals, nor has it posted on the Website a conspicuous "accessibility" notice, statement, or policy to provide blind and visually

12

disabled persons a viable alternative means to quickly, fully, and effectively access and navigate the Website.  Defendant thus has failed to make reasonable modifications in its policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 28 C.F.R. §36.302.  The lack of a viable and effective "accessibility" notice, policy, or statement and the numerous access barriers as set forth in the Declaration of Plaintiff's expert, Robert D. Moody, attached hereto as Composite Exhibit "A" and the contents of which are incorporated herein by reference, continue to render the Website not fully accessible to users who are blind and visually disabled, including Plaintiff.

63.     More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

64.     Further, the Website does not offer or include the universal symbol for the disabled that would permit disabled individuals to access the Website's accessibility information and accessibility facts.

65.     There are readily available, well established guidelines on the internet for making Websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but not limited to, adding alt-text to graphics, and ensuring that all functions can be performed using a keyboard. Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

66.     Defendant has violated the ADA -- and continues to violate the ADA -- by denying access to the Website by individuals, such as Plaintiff, with visual disabilities who requires the

assistance of interface with screen reader software to comprehend and access internet websites. These violations within the Website are ongoing.

67.     The ADA and ADAAA require that public accommodations and places of public accommodation ensure that communication is effective.

68.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems". Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

69.     According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

70.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

71.     As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

72.     As a direct and proximate result of Defendant's failure to provide an ADA compliant Website, with a nexus to its brick and mortar physical stores locations, Plaintiff has

suffered an injury in fact by being denied full access to and enjoyment of Defendant's Website and physical stores.

73.     Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

74.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

a)  Require Defendant to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the Website to a functional statement as to the Defendant's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through the Website.

b)  Require Defendant to take the necessary steps to make the Website readily accessible to and usable by visually disabled users, and during that time period prior to the Website's being readily accessible, to provide an alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

c)  Require Defendant to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the Website for purposes of viewing and locating Defendant's physical stores and locations, and becoming informed of and purchasing Defendant's merchandise online, and during that time period prior to the Website's being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website.

75.     Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA.  To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

A.  A declaration that Defendant's Website is in violation of the ADA;

B.  An Order requiring Defendant, by a date certain, to update the Website, and continue to monitor and update the Website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

C.  An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within the Website, wherein the logo[1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the Website;

D.  An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to ensure compliance thereto;

---

[1]  or similar.

E.  An Order directing Defendant, by a date certain, to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its Website;

F.  An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for the Website to ensure effective communication for individuals who are visually disabled;

G.  An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's Website to be fully accessible to the visually disabled;

H.  An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, the Website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I.  An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of the Website to identify any instances where the Website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

J.  An Order directing Defendant, by a date certain, to make publicly available and directly link from the Website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of the Website and

shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems;

K.  An award to Plaintiff of her reasonable attorney's fees, costs, and expenses; and

L.  Such other and further relief as the Court deems just and equitable.

## COUNT II – TRESPASS

76.    Plaintiff re-alleges paragraphs 1 through 53 as if set forth fully herein.

77.    Plaintiff's tangible personal property, being his computer and its hard drive, and the personal information and browsing history stored therein, has suffered a trespass by Defendant on each and every date that the Plaintiff has accessed Defendant's Website, due to Defendant's employment of software analytics which are present on and through the Website, which the Plaintiff has attempted to navigate.

78.    At all relevant times, Plaintiff did not consent to and was unaware that the Website was placing software on his computer due to his inability to effectively communicate with and fully view and access the Website.

79.    Plaintiff did not consent to the placement of tracking and information securing software on his computer; therefore, Defendant has committed a trespass against Plaintiff by placing such software and extracting information from his computer without his knowledge or consent.

80.    By the acts described hereinabove, Defendant has repeatedly and persistently engaged in trespass of Plaintiff's personal property in violation of Florida common law against trespass.

81.     Defendant's installation, operation, and execution of software on Plaintiff's computer have directly and proximately impaired the condition and value of the Plaintiff's computer, thereby causing Plaintiff damages.

82.     The Website has a "Privacy Policy" that discusses the automatic gathering of information from, and the automatic placement of cookies and other information gathering software on, computers and other electronic devices of users of the Website such as Plaintiff.  A copy of that "Privacy Policy" is attached hereto as Exhibit "B" and its contents are incorporated herein by reference.

83.     Defendant's trespass to chattels, nuisance, and interference has caused real and substantial damage to Plaintiff as follows:

a)   By consuming the resources of and/or degrading the performance of Plaintiff's computer (including space, memory, processing cycles, and internet connectivity);

b)  By infringing on Plaintiff's right to exclude others from his computer;

c)  By infringing on Plaintiff's right to determine, as the owner of his computer, which programs should be installed and operated on his computer;

d)  By compromising the integrity, security, and ownership of Plaintiff's computer; and

e)   By forcing Plaintiff to expend money, time, and resources in order to remove the programs that had been installed on his computer without notice or consent.

84.     Defendant's actions were taken knowingly, willfully, intentionally, and in reckless disregard for Plaintiff's rights under the law.

WHEREFORE, Plaintiff demands a judgment be entered against Defendant for all of Plaintiff's compensatory damages, interest, costs, and such further relief as the Court deems just and equitable.

DATED:  December 10, 2020

**RODERICK V. HANNAH, ESQ., P.A.**               **LAW OFFICE OF PELAYO**
Counsel for Plaintiff                                   **DURAN, P.A.**
4800 N. Hiatus Road                              Co-Counsel for Plaintiff
Sunrise, FL 33351                                4640 N.W. 7th Street
T. 954/362-3800                                 Miami, FL 33126-2309
954/362-3779 (Facsimile)                    T. 305/266-9780
Email:  rhannah@rhannahlaw.com        305/269-8311 (Facsimile)
                                            Email: duranandassociates@gmail.com

By____*s/ Roderick V. Hannah*____          By ___*s/ Pelayo M. Duran*_____
        RODERICK V. HANNAH               PELAYO M. DURAN
        Fla. Bar No. 435384                   Fla. Bar No. 0146595